**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:25-cv-04075-DDD-MDB

A.H., by and through her parents Kira Raimondo and Dustin Honeycutt,

Plaintiff,

v.

TRINIDAD SCHOOL DISTRICT #1; and
REBECCA WEBBER,

Defendants.

---

**ORDER GRANTING MOTION TO DISMISS**

---

Plaintiff A.H. is a minor who attends a school within Defendant Trinidad School District #1 ("Trinidad"). Defendant Rebecca Webber ("Ms. Webber") is an official at that school. Plaintiff has an emotional disability, and Defendants devised a tailored education plan, which included a protocol for responding to crises. Plaintiff alleges that during an episode of emotional dysregulation, Ms. Webber violated this protocol, resulting in Plaintiff's arm injury. Plaintiff claims that Trinidad failed to train and supervise Ms. Webber, causing her failure to adhere to the relevant protocol. The amended complaint brings nine claims—federal and state statutory and constitutional violations and negligence under Colorado common law. Though the complaint's allegations are troubling, it fails to state a claim for the federal causes of action. The court declines to exercise supplemental jurisdiction on the remaining state-law claims, so Defendants' motion to dismiss is granted. Doc. 27.

## BACKGROUND

The following facts, taken from Plaintiff's amended complaint, are presumed true for the purposes of this motion. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Plaintiff is a six-year-old who has been diagnosed with Disruptive Mood Dysregulation Disorder ("DMDD"), a disability and mood disorder "characterized by persistent instability, and frequent, intense outbursts." Doc. 26 at 3 (¶¶ 8–9). She therefore exhibits hyperactivity, aggression, attention problems, and emotional dysregulation. *Id.* (¶ 12). Plaintiff enrolled in kindergarten at Fisher's Peak Elementary, part of Defendant Trinidad, in August 2024. *Id.* (¶ 14). Between that August and November, Plaintiff was repeatedly disciplined for physical aggression toward other students. *Id.* at 3–4 (¶¶ 16–18). Ms. Webber, assistant principal, responded to these incidents and administered discipline. *Id.* at 4 (¶¶ 19–20).

Trinidad determined that Plaintiff was eligible for special education services and published an Individualized Education Plan ("IEP") for Plaintiff on December 17, 2024. *Id.* (¶¶ 23–26). The team that created the IEP also created a Behavioral Intervention Plan, which includes the requirement that Trinidad use Crisis Prevention Institute ("CPI") techniques when physically intervening in a behavioral episode. *Id.* at 5–6 (¶¶ 31–17). Ms. Webber was present at the meeting when the IEP was published and knew that CPI techniques should be used when physically intervening. *Id.* at 6 (¶¶ 39–40).

On or about January 16, 2025, Plaintiff became emotionally dysregulated during a fire drill. *Id.* (¶ 43). Ms. Webber approached Plaintiff, who "lashed out," contacting Ms. Webber, and Ms. Webber "seized" and "yanked" Plaintiff's arm, causing a dislocation.[1] *Id.* (¶¶ 45–

---

[1] Though the Court assumes at this stage that the facts alleged in the complaint are true, Defendants dispute this account of Plaintiff's injury.

47). Ms. Webber failed to use CPI techniques during this intervention. *Id.* at 6–7 (¶¶ 42, 55). The incident left Plaintiff with "nursemaid's elbow," a painful condition requiring treatment and leaving the arm vulnerable to reinjury. *Id.* at 7 (¶¶ 50–53).

Plaintiff's parents kept her home from school as she recovered from her injury. *Id.* at 10 (¶ 80). On February 13, Plaintiff's parents requested through counsel that Trinidad prepare a safety plan to facilitate Plaintiff's return to school. *Id.* (¶ 82). The safety plan was proposed on March 7 and finalized on March 18. *Id.* (¶¶ 84–85). After spring break, Plaintiff returned to School on March 24. *Id.* (¶ 86).

On December 18, Plaintiff (by and through her parents, Kira Raimondo and Dustin Honeycutt) initiated this action against Trinidad and Ms. Webber. Doc. 1. She filed an amended complaint on March 18, 2026, seeking compensation for her injuries and for the deprivation of services that occurred when she missed school afterward. Doc. 26. Against Trinidad, Plaintiff avers *Monell* liability under 42 U.S.C. § 1983 and disability discrimination and failure-to-accommodate claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Colorado Anti-Discrimination Act . *Id.* at 12–28 (¶¶ 104–211). Against Ms. Webber, she asserts disability discrimination under the Equal Protection Clause of the Fourteenth Amendment through Section 1983 and negligence under Colorado tort law. *Id.* at 28–26 (¶¶ 212–45).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) requires a court to "determine whether the complaint sufficiently alleges facts supporting all the elements

---

Defendants claim that Ms. Webber took Plaintiff's hand, and that the dislocation occurred when Plaintiff "suddenly threw her body on the floor." Doc. 27 at 3–4.

necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215. "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. At this stage, the well-pleaded facts underlying a plaintiff's allegations must articulate a viable legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. Claim IX

Plaintiff asserts Ms. Webber violated the Equal Protection Clause under 42 U.S.C. § 1983. "Different types of equal protection claims call for different forms of review." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). But regardless of the level of scrutiny, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Id.* at 1172–73 (internal citation omitted). "The 'similarly situated' requirement is an 'exacting burden,' which

requires the comparative individuals to be *prima facie* identical in all relevant respects or directly comparable in all material respects." *Gallegos v. Adams Cnty. Sch. Dist. 14*, No. 17-cv-00306-CMA-NYW, 2017 WL 4236320, at *6 (D. Colo. Sept. 25, 2017) (internal citation omitted). Defendants correctly observe, and Plaintiff does not rebut, that "Plaintiff identifies no similarly situated individuals who she alleges were treated differently than her." Doc. 27 at 9. Plaintiff's Section 1983 claim against Ms. Webber is thus dismissed for failing to state a claim. Since Plaintiff has alleged no constitutional violation, the Court need not further assess whether Ms. Webber is entitled to qualified immunity.

## II. Claims I–IV

Plaintiff alleges that Trinidad discriminated against her based on her disability status under the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12131 *et seq*. and Section 504 of the Rehabilitation Act, 29 U.S.C § 794. The Court disposes of both claims using the same analysis. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (equivalence between relevant portions of ADA and Rehabilitation Act).

To plead a viable claim, Plaintiff must allege (1) "she is a qualified individual with a disability"; (2) "she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) "that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (citation modified). Courts have recognized two types of claims based on the second element. *Id.* One is discrimination, which can be established three ways: "(1) intentional discrimination (disparate treatment);

(2) disparate impact; and (3) failure to make a reasonable accommodation." *Id.*

Plaintiff alleges intentional discrimination and failure to make a reasonable accommodation. While both are treated as distinct theories, they overlap here. A plaintiff must demonstrate intentional discrimination to recover compensatory damages, even in a failure-to-accommodate case.[2] *Hamer v. City of Trinidad*, 924 F.3d 1093, 1108–1109 (10th Cir. 2019). The parties proceed as though Plaintiff seeks only compensatory damages and must thus demonstrate discriminatory intent.[3] Intentional discrimination may be inferred not just from "personal animosity or ill will" but from "deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) (cleaned up). Plaintiff establishes neither.

---

[2] For the avoidance of confusion, the Court notes that while Rehabilitation Act claims require proof of intentional discrimination to recover compensatory damages, the Tenth Circuit has proceeded as though, but has not decided, that the same is true of ADA claims. *Callaway v. Indep. Sch. Dist. No. 1 of Okmulgee Cnty.*, No. 25-7062, 2026 WL 2445277, at *5 (10th Cir. Aug. 20, 2026). The Court need not resolve that issue here.

[3] Defendants argue in essence that Plaintiff does not demand relief obtainable without proof of intentional discrimination, meaning that Plaintiff must plausibly plead intent not just to obtain certain remedies, but to state a claim at all. Doc. 27 at 12. Regardless of that argument's independent persuasiveness, Plaintiff appears to acquiesce to Defendants' interpretation of her pleadings. Plaintiff does so by arguing that she has sufficiently pled deliberate indifference, rather than arguing that she need not plead this for her failure-to-accommodate claim. Doc. 31 at 12. Thus, the Court treats both the failure-to-accommodate and intentional discrimination claims as hinging on whether Plaintiff has plausibly pled intentional discrimination.

To show animus, Plaintiff conclusorily asserts "Defendant Webber grabbed Plaintiff and yanked her by the arm because of her disabilities and manifestations of those disabilities." Doc. 26 at 15 (¶ 127). But the Court does not accept this type of bare legal assertion as true, as Plaintiff offers little to support it besides vague "information and belief." *Id.* (¶ 129); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to survive a motion to dismiss]"). Plus, Plaintiff fails to support her implicit premise that frustration with "manifestations of disabilities" counts as discrimination against the disabled. Doc. 26 at 15–16 (¶ 129). The Tenth Circuit has suggested the opposite. *J.V.*, 813 F.3d at 1296 (10th Cir. 2016) ("[Appellants] cite no authority suggesting a school may not regulate a student's conduct if that conduct is a manifestation of a disability. Rather, as *Bernalillo County* indicated, a student's conduct may be regulated, so long as action is not taken by reason of the student's disability.") (internal citation omitted)).

Because Plaintiff has failed to support her accusation of animus, her allegations are equally consistent with two other explanations for Ms. Webber's behavior. Ms. Webber may have "yanked" Plaintiff's arm trying in good faith to restrain her. Or, as Plaintiff acknowledges, Ms. Webber may have been angry with Plaintiff not because of her disability but because of her behavior, a "manifestation" of her disabilities. But as discussed above, Plaintiff provides no reason to assume that frustration with a manifestation of a disability qualifies as animus toward the disabled person. Allegations consistent with both lawful and unlawful behavior fail to state a claim. *See Twombly*, 550 U.S. 545 (claim not plausibly stated where alleged facts "consistent with" illegal conduct but "just as much in line with a wide swath" of legal conduct).

Much as Plaintiff fails to plausibly plead that Ms. Webber acted with animus, she fails to plead that Ms. Webber exhibited deliberate indifference. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *J.V.*, 813 F.3d at 1298 (internal citation omitted). This is a high standard; "failure to act must be 'more than negligent' and involve 'an element of deliberateness.'" *Id.* (internal citation omitted). While one should not yank a small child's arm, disabled or not, the question is not whether Ms. Webber was deliberately indifferent to the possibility that Plaintiff might get hurt, but whether she exhibited deliberate indifference to the possibility that Plaintiff's federal right to disability accommodation would be violated. Since Plaintiff offers nothing suggesting how her disability status might have impacted Ms. Webber's actions, Plaintiff fails to offer anything that might constitute "stringent proof" of the required "element of deliberateness." *J.V.*, 813 F.3d at 1298. Claims I–IV are dismissed.

## III. Claim VII

Plaintiff alleges that by failing to adequately train and supervise Ms. Webber, Trinidad caused the violation of Plaintiff's constitutional rights. Doc. 26 at 26 (¶ 196). "It is well established *Monell* allows plaintiffs to sue local governing bodies (or their functional equivalents) directly under § 1983 for constitutional violations pursuant to a body's policy, practice, or custom." *Myers v. Turn Key Health Clinics, LLC*, No. 24-5113, 2026 WL 73939, at *5 (10th Cir. Jan. 9, 2026) (internal citation omitted) (discussing liability under *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). There can be no *Monell* liability, however, "without an underlying constitutional violation." *Morphew v. Chaffee Cnty., Colorado*, 172 F.4th 802, 817 (10th Cir. 2026); *Myers*, 2026 WL 73939, at *5 (this "is well settled" regardless

of "[w]hatever *Monell* theory a plaintiff advances"). Because Plaintiff has failed to plead a constitutional violation, her *Monell* claim fails. Claim VII is thus dismissed.

### IV. Claims V, VI, and VIII

Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state claims and dismisses them without prejudice. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (internal citation omitted)).

## CONCLUSION

It is **ORDERED** that:

Trinidad School District #1 and Rebecca Webber's Motion to Dismiss, **Doc. 27**, is **GRANTED**;

Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**; and

The Clerk of Court is directed to **TERMINATE** this case.

DATED: October 28, 2026

BY THE COURT:

Daniel D. Domenico
United States District Judge